**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LAWRENCE LESSIG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LIBERATION MUSIC PTY LTD, | ) |
| | ) |
| Defendant. | ) |
| | ) |

<u>CASE NO:</u>

**COMPLAINT**

**COMPLAINT**

**NATURE OF ACTION AND RELIEF SOUGHT**

1.      This is a civil action seeking a declaratory judgment, injunctive relief, and damages for misrepresentation under Title II of the Digital Millennium Copyright Act, as codified at 17 U.S.C. § 512.

2.      This case arises from the defendant's improper assertion of copyright infringement against plaintiff Lawrence Lessig, a Harvard Law School professor ("Professor Lessig").  The infringement claim was based on Professor Lessig's posting, on the Internet video website YouTube, of a video recording of a lecture that Professor Lessig delivered at a conference of Creative Commons, a non-profit organization devoted to expanding digital creativity, sharing, and innovation.  As a result of defendant's assertion of infringement, YouTube disabled public access to the video.  Further legal threats from the defendant forced Professor Lessig to continue to keep the video offline pending a ruling from this Court.

3.      Because Professor Lessig's use of the copyrighted material in question is lawful under the statutory "fair use" doctrine set forth in the Copyright Act, 17 U.S.C. § 107, Professor Lessig brings this action to clarify the rights of the parties and to refute the defendant's assertions of copyright infringement.

4.     Professor Lessig also seeks damages under the Digital Millennium Copyright Act, 17 U.S.C. § 512(f), in compensation for the defendant's knowing and material misrepresentation that Professor Lessig's video infringed the defendant's copyright interests.

## PARTIES

5.     Plaintiff Lawrence Lessig is the director of the Edmond J. Safra Center for Ethics at Harvard University and the Roy L. Furman Professor of Law and Leadership at Harvard Law School in Cambridge, Massachusetts.  He resides in Brookline, Massachusetts.

6.     Defendant Liberation Music Pty Ltd ("Liberation Music") is a record company based in Melbourne, Australia.

7.     On information and belief, Liberation Music claims to be authorized to enforce the copyrights of an alternative rock band named Phoenix, which is based in Versailles, France.

## JURISDICTION AND VENUE

8.     This action arises under the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq.*, and Title II of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.

9.     This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

10.     This Court has personal jurisdiction over Liberation Music because Liberation Music intentionally caused harm to Professor Lessig in Massachusetts, issued its copyright threat to Professor Lessig in Massachusetts, and, on information and belief, conducts regular business in Massachusetts.

11.     Liberation Music does substantial business in the United States.  Liberation Music products, by artists such as Archie Roach, Jimmie Barnes, and Hunters & Collectors, are widely available for sale in the United States through Amazon.com and iTunes.  Liberation Music also does business in the United States by entering into licensing agreements with domestic record companies, such as an exclusive license to Glassnote Entertainment Group LLC and Columbia Records to distribute products by the artist Temper Trap in the United States.

12.     Venue for this action is proper under 28 U.S.C. §1391(b)(2).

## FACTUAL ALLEGATIONS

13.     Professor Lawrence Lessig is an internationally renowned expert on law and technology, with a special focus on copyright issues and, in recent years, campaign finance and political reform.

14.     Professor Lessig has published numerous books and articles on copyright in the digital age, and served as legal counsel for the plaintiffs in two of the most influential copyright cases in recent years, *Eldred v. Ashcroft*, 537 U.S. 186 (2003), and *Golan v. Gonzale*s, 501 F.3d 1179 (10th Cir. 2007).

15.     Professor Lessig is a co-founder of several nonprofit organizations, including Creative Commons, which is devoted to expanding the range of creative works available for others to build upon and share legally.  Since it was founded in 2001, Creative Commons has grown to an international movement with over 100 affiliates around the globe.

16.     Professor Lessig is a Member of the American Academy of Arts and Sciences and the American Philosophical Association.  He has received numerous awards, including the Free Software Foundation's Freedom Award, and the Fastcase 50 Award, which recognizes "the law's smartest, most courageous innovators, techies, visionaries & leaders."

17.     Professor Lessig has been named one of Scientific American's Top 50 Visionaries.

18.     Throughout his career, Professor Lessig has endeavored to promote his concerns and ideas to as wide an audience as possible.

19.     In addition to his teaching schedule at Harvard Law School, Professor Lessig is a prominent public speaker.  He has delivered lectures in a variety of forums around the world, seeking to educate the public about law, technology, and political reform.

20.     Professor Lessig posts many of his lectures on the website YouTube, in order to help inform the public about issues relating to law, technology, and political corruption.

21.     YouTube is a video-sharing website where millions of Internet users post videos which are then available to others for viewing.   These videos range from traditional home recordings of personal events to news reports, advertisements, and television programs.

22.     Professor Lessig has uploaded over 50 original lectures to YouTube where, cumulatively, they have been viewed over 100,000 times.

### Professor Lessig's "Open" Lecture

23.     On June 4, 2010, Professor Lessig delivered the keynote address at a Creative Commons conference in Seoul, South Korea.

24.     In the 49-minute lecture, titled "Open," Professor Lessig discussed the present and future of cultural and technological innovation.

25.     The lecture included several clips of amateur music videos in order to illustrate cultural developments in the age of the Internet.

26.     One set of clips was taken from videos created by amateurs around the world, each of which depicts groups of people dancing to the same song, "Lisztomania," by the band Phoenix.

27.     The "Lisztomania" copycat video phenomenon started when a YouTube user, called "avoidant consumer," posted on YouTube a video combining scenes from several movies, with the song "Lisztomania" serving as the soundtrack to the video.

28.     Inspired by avoidant consumer's work, other YouTube users from around the world, located in places as disparate as Brooklyn and San Francisco as well as  Latvia, Kenya, Brazil and Israel, created their own versions of the video, with real people "performing" the roles of the actors in the original movies, and again with "Lisztomania" as the soundtrack.

29.     Professor Lessig included these clips in the "Open" lecture to illustrate how young people are using videos and other tools to create and communicate via the Internet.

30.     Professor Lessig refers to this kind of communication as the latest in a time-honored "call and response" tradition of communication.

### The Fair Use Doctrine

31.     Pursuant to Section 107 of the Copyright Act, 17 U.S.C. § 107, certain uses of copyrighted works are authorized by law as "fair uses."

32.     In determining whether the use of a copyrighted work in any particular case is protected as fair use, the statutory factors to be considered include (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.  17 U.S.C. § 107.

33.     Professor Lessig's illustrative use of the clips in question, particularly in the context of a public lecture about culture and the Internet, is permitted under the fair use doctrine and, therefore, does not infringe the defendant's copyright.

34.     Professor Lessig's *purpose* was non-commercial and highly transformative, in that it was entirely different from Phoenix's original purpose in creating the work.  Whereas Phoenix's original purpose was presumably to entertain music fans, and to make money doing so, Professor Lessig's purpose was educational, and neither Professor Lessig nor Creative Commons gained any profit from the illustrative use of the clips in question in the "Open" lecture.

35.     The *nature of the original work* is creative.  However, because the song "Lisztomania" was released on April 16, 2009, and the album containing the song was released worldwide on May 25, 2009, Professor Lessig's limited use of brief video clips using "Lisztomania" as a soundtrack did not compromise Phoenix's or the defendant's rights to control the first appearance of the song.

36.     *The amount used was minimal*:  Professor Lessig incorporated into his lecture five clips of videos using the song as a soundtrack.  While the song "Lisztomania" as released by Phoenix is just over four minutes long, the five clips used in the "Open" lecture ranged in length

from only 10 seconds to 47 seconds, no more than needed to illustrate the phenomenon in order to comment upon it.

37.    Professor Lessig's use caused no *market harm*.  Professor Lessig's 49-minute scholarly lecture included only short clips of videos that were set to the song "Lisztomania," with Professor Lessig continuing to lecture over the music.  The "Open" lecture is not a market substitute for a sound or video recording of the song "Lisztomania" and the lecture did not harm any market for the song.

38.    On or about June 8, 2013, Professor Lessig arranged to have a video of the "Open" lecture posted on YouTube.

**The Digital Millennium Copyright Act and the "Takedown" Procedure**

39.    Title II of the Digital Millennium Copyright Act of 1998 ("DMCA"), 17 U.S.C. § 512, grants online service providers (like YouTube) protections from secondary copyright infringement liability, so long as they meet certain requirements.

40.    One requirement of this DMCA "safe harbor" is that online service providers must implement a "notice-and-takedown" system.

41.    The DMCA provides that the owner of copyrighted material may submit a "takedown notice" to an online service provider that is hosting material that allegedly infringes the copyright held by the issuer of the notice.

42.    The DMCA provides that a takedown notice should be in writing and should state, among other things, that the complaining party has a good faith belief that the use of the material is not authorized by the copyright owner or by law.  17 U.S.C. § 512(c)(3).

43.    Upon receipt of a proper takedown notice, a service provider must "respond[] expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity."  17 U.S.C. § 512(c)(1)(C).

44.    The DMCA then provides that the user who posted the allegedly infringing material that is the subject of the takedown notice may in turn submit a "counter-notice" contesting the claim of infringement.

45.     In order to be valid, the counter-notice must include the user's contact information, a signature, a statement under penalty of perjury that the "material was removed or disabled as a result of a mistake or misidentification," and the user's consent to the jurisdiction of his or her local federal court.  17 U.S.C. § 512(g).

46.     Once a counter-notice has been submitted, the copyright owner has 10-14 business days to file a copyright infringement lawsuit against the user.  If the copyright owner does not do so, the service provider can restore the video without fear of secondary liability for copyright infringement.

47.     Section 512(f) of the DMCA also creates a cause of action for the user who posted the allegedly infringing material against "[a]ny person who knowingly materially misrepresents under this section (1) that material or activity is infringing, or (2) that material or activity was removed or disabled by mistake or misidentification."  17 U.S.C § 512(f).

### The Takedown

48.     On information and belief, Defendant Liberation Music is a sophisticated music industry company with extensive experience in copyright law, and with staff who are familiar with the DMCA (including the Section 512 "good faith" requirements) and with the principles and application of the fair use doctrine.

49.     On June 30, 2013, Professor Lessig received a notice from YouTube that his video posting of the "Open" lecture had been identified as having content owned or licensed by Viacom and, as a result, had been blocked, pursuant to YouTube's filtering procedures.

50.     On information and belief, around the same time, Liberation Music, and/or its representative, also caused YouTube to block the video.  Professor Lessig did not receive a notice of that block, however.

51.     In accordance with YouTube's procedures, Professor Lessig filed a notice disputing the Viacom block, and YouTube restored access to the video.

52.     On information and belief, when YouTube was set to restore access to the video, Liberation Music, and/or its representative, issued a DMCA takedown notice.

53.     On or about June 30, 2013, Liberation Music submitted a DMCA takedown notice to YouTube demanding the removal of the video of the "Open" lecture from the YouTube website, claiming the video infringed a copyright owned or administered by Liberation Music. On information and belief, before it submitted its DMCA takedown notice, Liberation Music was presented with an express warning that "any person who knowingly misrepresents that material or activity is infringing may be subject to liability."

54.     As a result of Liberation Music's takedown notice, YouTube shut down public access to the video of the "Open" lecture.

55.     On June 30, YouTube sent Professor Lessig an email notifying him that it had removed the video of the "Open" lecture, pursuant to a complaint from Liberation Music that the material was infringing.  The email warned Professor Lessig that repeated incidents of copyright infringement could lead to the deletion of his YouTube account and all videos uploaded to the account.  *See* Notice of Video Removal, attached hereto as Exhibit A.

56.     On July 3, 2013, Professor Lessig submitted a counter-notice pursuant to Section 512(g).

57.     YouTube subsequently forwarded the counter-notice to Liberation Music.

58.     On July 8, 2013, Liberation Music emailed Professor Lessig directly.

59.     The July 8 email stated that Liberation Music would "commence legal proceedings in the United States District Court for the District of Massachusetts . . . for copyright infringement" against Professor Lessig "in 72 hours" if he did not retract his counter-notice.

60.     The July 8 email further stated that "This is your official notice and warning of the commencement of these proceedings."  It also quoted material from YouTube's website regarding the penalties for copyright infringement.  *See* Response to Counter-Notice, attached hereto as Exhibit B.

61.     On July 10, 2013, in response to Liberation Music's threat of litigation, Professor Lessig retracted his counter-notice.  The video of his "Open" lecture continues to this date to be removed from the YouTube website.

## COUNT I

**[Declaratory Relief Pursuant to 28 U.S.C. § 2201, *et seq.* (Declaratory Judgment Act) and the Copyright Act (Title 17 of the U.S. Code)]**

62.     Plaintiff Professor Lessig incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

63.     There is a real and actual controversy between Professor Lessig and Defendant regarding whether Professor Lessig's use in his "Open" lecture of video clips using the song "Lisztomania," and his posting of a video of that lecture on YouTube, infringes a copyright that Defendant lawfully owns or administers.

64.     Defendant's conduct has forced Professor Lessig to choose between sharing his work and views publicly and risking legal liability.  The controversy between Professor Lessig and Defendant is thus real and substantial and demands specific relief through a decree of a conclusive character.

65.     Professor Lessig is entitled to declaratory judgment that his use in his "Open" lecture of video clips that used "Lisztomania" as a soundtrack is lawful under the fair use doctrine and does not infringe the Defendant's copyright.

## COUNT II

**[Violation of Section 512(f) of the Digital Millennium Copyright Act]**

66.     Professor Lessig incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

67.     Professor Lessig's use in his "Open" lecture of video clips that used "Lisztomania" as a soundtrack is lawful under the fair use doctrine and does not infringe any copyright that Defendant owns or administers.

68.     On information and belief, Defendant knew that the "Open" lecture did not infringe its copyright when it sent YouTube the takedown notice regarding the video of the "Open" lecture.  Defendant acted in bad faith when it sent the takedown notice, knowingly and materially misrepresenting that it had concluded that the video was infringing.

69.    In the alternative, Defendant should have known, if it had acted with reasonable care or diligence, that the video of the "Open" lecture did not infringe Defendant's copyright on the date it sent YouTube its complaint under the DMCA.

70.    As a direct and proximate result of Defendant's actions, Plaintiff has been injured substantially and irreparably.   Such injury includes, but is not limited to, the financial and personal expenses associated with responding to the claim of infringement, harm to his free speech rights under the First Amendment, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

1.    For a declaration that publication of the video recording of Professor Lessig's lecture "Open" is protected by the fair use doctrine and does not infringe Defendant's copyright;

2.    For an order enjoining Defendant, its agents, attorneys, and assigns from asserting a copyright claim against Professor Lessig in connection with his lecture "Open";

3.    For damages according to proof;

4.    For costs of suit incurred herein, including reasonable attorneys' fees; and

5.    For such other and further relief as the Court may deem just and proper.


Dated: August 22, 2013              By:      /s/ Christopher M. Morrison

Of Counsel:                          Christopher M. Morrison
Corynne McSherry                     James L. Tuxbury
Daniel Nazer                         JONES DAY
Mitch Stoltz                         100 High Street
ELECTRONIC FRONTIER                  21st Floor
FOUNDATION                           Boston, MA  02110
815 Eddy Street                      Tel:  (617) 960-3939
San Francisco, CA 94109              Fax:  (617) 449-6999
Tel:  (415) 436-9333
Fax:  (415) 436-9993

Geoffrey S. Stewart
Edwin L. Fountain
JONES DAY
51 Louisiana Avenue, N.W
Washington, D.C.  20001-2113
Tel:  (202) 879-3939
Fax:  (202) 626-1700

*Attorneys for Plaintiff Lawrence Lessig*